IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN LAYER, on behalf of himself and similarly situated employees, | : : : | |
| Plaintiff, | : | 2:18-cv-02358-PD |
| v. | : : | |
| TRINITY HEALTH CORPORATION; MERCY HEALTH SYSTEM; and LOURDES HEALTH SYSTEM, | : : : | |
| Defendants. | : : | |

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

John Layer ("Plaintiff") has sued Trinity Health Corporation ("Trinity"), Mercy Health System ("Mercy"), and Lourdes Health System ("Lourdes") (collectively "Defendants") for failing to pay him overtime wages as required by the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). See Complaint (Doc. 1). Defendants respond with a Rule 12(b)(6) motion arguing that under the FLSA: (i) Trinity is not one of Plaintiff's employers and (ii) Mercy and Lourdes are not his "joint employers." See Def. Br. (Doc. 16).[1]

As discussed below, Defendants' motion lacks merit and should fail:

**A. Plaintiff's general overtime rights claim.**

The factual allegations relevant to the employment/joint employment issues raised in Defendants' motion are summarized in Section C below. In the meantime, here is a brief summary of Plaintiff's basic legal claim:

The FLSA and PMWA allow employees to receive overtime pay for hours worked over 40 per week. See 29 U.S.C. § 207(a)(2); 43 P.S. § 333.104(c). This obligation is modified for

---

[1] Defendants ignore Plaintiff's PMWA claim except for a brief footnote. See Def. Br. (Doc. 16) at p. 6 n. 3.

1

health care employers so that, under some circumstances, overtime pay is not due until the employee's hours exceed 80 in a 14-day period.  See 29 U.S.C. § 207(j); 43 P.S. § 333.104(c).

Plaintiff works as a Medical Lab Technician, is paid an hourly wage, and is classified as non-exempt from federal and state overtime laws.  See Complaint (Doc. 1) at ¶ 21.  Sometimes, during the same 7-day week or 14-day pay period, Plaintiff works at *both* Mercy facilities (particularly the Mercy Philadelphia Hospital) and Lourdes facilities (particularly Our Lady of Lourdes Medical Center and/or Lourdes Medical Center of Burlington County).  See id. at ¶ 22.  Plaintiff contends that, during such weeks and pay periods, his overtime pay should be based on his *total, combined* hours working at *all* facilities.  See id. at ¶ 24 and Counts I-II.  Defendants violated this rule.  See Complaint (Doc. 1) at ¶ 24.

Most people who "work two jobs" have no right to combine their hours for overtime calculation purposes.  Let's say, for example, Ms. Jones works Monday-Friday driving a forklift at the warehouse and, in addition, works a few evenings as a waitress at the local diner.  No one would suggest that Ms. Jones gets to combine her forklift-driving and waitressing hours for overtime pay purposes.  That's because the warehouse and the diner are unrelated entities.

But Plaintiff's lawsuit is very different.  Here, Mercy and Lourdes are both part of Trinity's integrated network of health systems.  See Section C infra (summarizing factual allegations).  So, for purposes of calculating overtime pay, all of Plaintiff's work hours must be combined together.  Otherwise, a large business conglomerate (like Trinity) with multiple arms could circumvent the overtime laws by simply spreading an employees' work hours among the various arms.  That's unfair.  So the Department of Labor implemented 29 C.F.R. § 791.2(a)-(b), which generally prevents such practices.  The Court is respectfully referred to this regulation for a good summary of the legal principles applicable to Plaintiff's general liability theory.

**B. The Third Circuit's *Thompson* opinion specifically addresses joint employment at the pleadings stage.**

Defendants ignore the most important case. In Thompson v. Real Estate Mortgage Network, 748 F.3d 142 (3d Cir. 2014), the Third Circuit explained that, at the pleadings stage, workers are not expected to have detailed information regarding the interrelationships between corporate defendants and, therefore, cannot be expected to definitively litigate each defendants' employer status. See Thompson, 748 F.3d at 148-49; see also Field v. DIRECTV LLC, 2015 U.S. Dist. LEXIS 193177, *4-6 (E.D. Pa. Aug. 21, 2015) (Diamond, J.) (denying motion to dismiss FLSA claim and explaining that joint employment determination must be based "'on a consideration of the total employment situation'").

In Thompson, a mortgage underwriter named Patricia Thompson alleged that two related companies – Security Atlantic Mortgage Company ("Security Atlantic") and Real Estate Mortgage Network ("REMN") – were jointly liable under the FLSA for improperly classifying her as overtime-exempt. See Thompson, 748 F.3d at 145-46. The district court dismissed the FLSA claim, holding that Ms. Thompson failed to plead that Security Atlantic and REMN were joint employers under the FLSA. See id. at 147; see also Thompson v. Real Estate Mortgage Network, 2012 U.S. Dist. LEXIS 190045, *12-14 (D.N.J. Aug. 31, 2012). The district court provided Ms. Thompson with the opportunity to re-plead. See Thompson, 748 F.3d at 145-46. However, she declined the invitation and appealed instead. See id.

On appeal, the Third Circuit reversed the district court. See Thompson, 748 F.3d at 148-49. In so doing, the Court made some important observations that are relevant here:

*First*, the Court recognized the basic principle that, in deciding Rule 12(b)(6) motions, judges must "accept as true all facts set forth in the [complaint], and draw all reasonable inferences from such allegations in favor of the claimant." Thompson, 748 F.3d at 145 n. 1

3

(citing Warren General Hospital v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).

*Second*, the Court explained that the FLSA "defines employer 'expansively,' and with 'striking breadth.'" Id. at 148 (quoting In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig., 683 F.3d 462, 467 (3d Cir. 2012)). In fact, "the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'" Id. (quoting Enterprise, 683 F.3d at 467-68).

*Third*, the Court recognized that its previous Enterprise opinion described four factors that are relevant to the joint employment analysis. See Thompson, 748 F.3d at 149 (quoting Enterprise, 683 F.3d at 469. However, the Court explained that these four factors are "non-exhaustive." Id. That's because the FLSA employment "determination depends on 'all the facts of a particular case.'" Id. (quoting 29 C.F.R. 791.2(a)); see also Enterprise, 683 F.3d at 469 ("We emphasize, however, that these factors *do not constitute an exhaustive list* of all potentially relevant facts and should not be 'blindly applied.'"); Field, 2015 U.S. Dist. LEXIS 193177, at *5 (same); Rapczynski v. DIRECTV, LLC, 2016 U.S. Dist. LEXIS 34833, *16 (M.D. Pa. Mar. 17, 2016)

*Fourth*, the Court explained that the employment analysis often turns on evidence that is unavailable at the pleadings stage and goes beyond the personal knowledge of the individual plaintiff:

> We caution that our assessment rests heavily on the procedural posture of this litigation. *Thompson, a low-level employee with each of the defendant companies, has had no opportunity for discovery as to payroll and taxation documents, disciplinary records, internal corporate communications, or leadership and ownership structures.* It may well be that a fully developed factual record will preclude a finding that Security Atlantic and REMN were "joint employers" of Thompson for any of the pay periods at issue. But under these circumstances, we cannot say that Thompson's Amended Complaint fails to state a claim upon which

4

> relief can be granted. We will vacate the District Court's dismissal of Thompson's claims in this regard and remand for further proceedings.

Thompson, 748 F.3d at 149 (emphasis supplied).[2]

*Fifth*, the Court held that Ms. Thompson adequately pled joint employment based on only three factual allegations: (i) that REMN provided her with training after she was hired by Security Atlantic; (ii) that one of the trainers referred to REMN as being Security Atlantic's "sister company;" and (iii) that, after Security Atlantic went out of business, Ms. Thompson was integrated into REMN's business. See Thompson, 748 F.3d at 149.

### C. **Plaintiff sufficiently pleads that he was employed by Trinity under the FLSA.**

Defendants argue that Trinity cannot plausibly be one of Plaintiff's employers under the FLSA. See Def. Br. (Doc. 16) at 10-19. Defendants address each of the four Enterprise factors and, ignoring most of Plaintiff's factual allegations, assert that none of the factors can be satisfied. See id. Defendants' analysis is flawed for at least three reasons:

*First*, Defendants are too hung up on the Enterprise factors. As Thompson makes clear, the Enterprise factors are "non-exhaustive" because the FLSA employment "determination depends on 'all the facts of a particular case.'" Id. (quoting 29 C.F.R. 791.2(a)). The Enterprise Court similarly "emphasize[d] . . . that these factors *do not constitute an exhaustive list* of all potentially relevant facts and should not be 'blindly applied.'" Enterprise, 683 F.3d at 469

---

[2] See also Harris v. Medical Transportation Management, Inc., 300 F. Supp. 3d 234, 243 (D.C. Cir. 2018) ("defeating a claim of joint employment at the motion to dismiss stage is no easy task"); Benitez v. Demco of Riverdale, LLC, 2015 U.S. Dist. LEXIS 20325, *4 (S.D.N.Y. Feb. 19, 2015) (whether a franchisor is a joint employer "presents a question of fact that cannot be resolved on a pre-answer motion to dismiss"); Aguilar v. United Floor Crew, 2014 U.S. Dist. LEXIS 166468, *9 (S.D. Fla. Dec. 1, 2014) (joint employment "inquiry is ill-suited for consideration on a motion to dismiss."); Jennings v. Rib King West Palm, LLC, 2012 U.S. Dist. LEXIS 183959, *6 (S.D. Fla. Aug. 15, 2012) ("resolution of this matter at this stage in the proceedings is premature").

(emphasis in original).[3]  Indeed, at discussed in Section B above, the Thompson Court did not strictly follow the Enterprise factors when it reversed the district court based on only *three* of Ms. Thompson's factual allegations.  See Thompson, 748 F.3d at 149.

*Second*, Defendants' assertion that Trinity does not "employ" Plaintiff and other individuals who work in its national health care network is flatly contradicted by Trinity's own corporate website, which asserts that Trinity "*employ[s]* more than 133,000 colleagues" throughout the country.  See Complaint (Doc. 1) at ¶ 14 (emphasis supplied).  This assertion, standing alone, sufficiently enables the Court to "draw [the] reasonable inference[]," Thompson, 748 F.3d at 145 n. 1, that Plaintiff is among the 133,000 individuals "employed" by Trinity.

*Third*, Defendants ignore many of Plaintiff's well-pled allegations regarding Trinity.  These allegations include the following:

- Trinity publicly asserts that it "controls" one of the Nations' largest health care systems, which it characterizes as a "comprehensive integrated network" that includes both Mercy and Lourdes.  See Complaint (Doc. 1) at ¶¶ 10-12.

- Trinity publicly asserts that it "*employs*" over 133,000 individuals.  See id. at ¶ 14 (emphasis supplied).  Plaintiff is one of these employees.  See id.

- Trinity publicly asserts that, in the fiscal year ending June 30, 2016, it paid its employees $7,056,453,000 in "[s]alaries and wages."  See id. at ¶ 15.  This includes salaries and wages paid to Plaintiff.  See id.

- Trinity publicly asserts that, in the fiscal year ending June 30, 2016, it paid its employees $1,457,253,000 in "*[e]mployee* benefits."  See id. at ¶ 16.  This amount

---

[3]  See also Hall v. DIRECTV, LLC, 846 F.3d 757, 770 (4th Cir. 2017) ("because the status of a particular employment relationship is highly fact-dependent, we emphasized that the absence of a single factor – or even a majority of factors – is not determinative of whether joint employment does or does not exist").

- includes benefits paid to Plaintiff.  See id.

- Trinity maintains insurance policies – including worker's compensation policies – that cover Plaintiff and his work.  See id. at ¶ 17.

- Trinity's pension plan covers Plaintiff.  See id. at ¶ 18.

- Trinity has implemented a set of "Policies and Procedures" that apply to Plaintiff and cover his work.  See id. at ¶ 19.

- Trinity maintains a "centralized payroll system" that it uses to determine Plaintiff's compensation.  See id. at ¶ 20.

The above allegations go well beyond the allegations cited by the Thompson Court in reversing the district court's dismissal order.

*Third*, if the Court finds it necessary to compare Plaintiff's factual allegations to the Enterprise factors, the following table may be useful:

| **Enterprise Factor** | **Plaintiff's Factual Allegations** |
|---|---|
| The alleged employers' authority to hire and fire the relevant employees. | Trinity asserts that it "***controls***" a "comprehensive integrated network" that includes both Mercy and Lourdes.  See Complaint (Doc. 1) at ¶¶ 10-12 (emphasis supplied).<br><br>Trinity publicly asserts that it "***employs***" over 133,000 individuals.  See id. at ¶ 14 (emphasis supplied).  Plaintiff is one of these employees.  See id. |
| The alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment. | Trinity has implemented a set of "Policies and Procedures" that apply to Plaintiff and cover his work.  See id. at ¶ 19.<br><br>Trinity publicly asserts that it paid its employees $7,056,453,000 in "[s]alaries and wages."  See id. at ¶ 15.  This amount includes salaries and wages paid to Plaintiff.  See id. |

7

|  | Trinity publicly asserts that it paid its employees $1,457,253,000 in "*[e]mployee* benefits." See id. at ¶ 16 (emphasis supplied). This amount includes salaries and wages paid to Plaintiff. See id.<br><br>Trinity's pension plan covers Plaintiff. See id. at ¶ 18. |
|---|---|
| The alleged employer's involvement in day-to-day employee supervision, including employee discipline | Trinity has implemented a set of "Policies and Procedures" that apply to Plaintiff and cover his work. See id. at ¶ 19. |
| The alleged employer's actual control of employee records, such as payroll, insurance, or taxes. | Trinity maintains a "centralized payroll system" that it uses to determine Plaintiff's compensation. See id. at ¶ 20.<br><br>Trinity maintains insurance policies – including worker's compensation policies – that cover Plaintiff and his work. See id. at ¶ 17. |

*In sum*, Plaintiff's factual allegations, when taken as true, "draw [the] reasonable inference[]," Thompson, 748 F.3d at 145 n. 1, that Trinity was one of Plaintiff's employers.

### D. **Plaintiff sufficiently pleads that he was jointly employed by Mercy and Lourdes.**

Defendants also assert that Plaintiff is not jointly employed by Mercy and Lourdes. See Def. Br. (Doc. 16) at 19-23. This argument is a little puzzling because Plaintiff clearly alleges that he worked at both Mercy and Lourdes facilities. See Complaint (Doc. 1) at ¶¶ 22, 24. And Defendants appear to accept the notion that Plaintiff was "employed" by Mercy when he worked at Mercy facilities and was "employed" by Lourdes when he worked at Lourdes facilities.

Defendants appear to contend that, for purposes of *calculating* overtime, Plaintiff's Mercy hours and Lourdes hours should not be combined. Defendants cite to a number of district court decisions (none from the Third Circuit) that purportedly endorse the concept of "horizontal

8

joint employment," see Def. Br. (Doc. 16) at 19-23, and they invite the Court to endorse a multi-factor test from a Southern District of New York case (Murphy) that includes factors that many individual employees cannot realistically address in the absence of discovery. See id. at 20. As such, the Murphy test, contradicts the Third Circuit's teaching in Thompson that, at the pleading stage, workers are not expected to have information regarding matters such as: "do the potential joint employers have overlapping officers, directors, executives, or managers" and "are there any agreements between the potential joint employers." Id.

This does not need to be so complicated. As noted earlier, the Department of Labor has implemented regulations addressing the issue at hand:

> Where the employee . . . works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist: . . . (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (emphasis supplied).

Here, Plaintiff has pled facts that that, when taken as true, "draw [the] reasonable inference[]," Thompson, 748 F.3d at 145 n. 1, that the above requirements can be satisfied. First, Plaintiff clearly asserts that he "works for two or more employers at different times during the workweek." See Complaint (Doc. 1) at ¶¶ 22, 24. Second, Plaintiff clearly asserts that Mercy and Lourdes are not "completely disassociated" and "may be deemed to share control of [Plaintiff], directly or indirectly, by reason of the fact that one employer is under common control with the other employer." See, e.g., id. at ¶¶ 10-12 (describing Trinity's common control of Mercy and Lourdes). As Plaintiff summarizes in the Complaint:

> As already explained, the Mercy and Lourdes Systems – like Trinity's other Network Locations – are cogs in a "comprehensive integrated

9

>network" of health providers that combine revenues, profits, and expenses in a consolidated financial statement, present themselves to consumers as having the resources and sophistication of a national healthcare conglomerate, see generally http://www.trinity-health.org (last viewed June 3, 2018), and achieve economies of scale by centralizing and consolidating human resource functions, payroll, employee benefit plans, and insurance coverage.  In sum, Trinity "***controls*** one of the largest health care systems in the United States."  CFO at p. 10 (emphasis supplied).

Id. at ¶ 26.

### E. Even if Defendants have not waived a PMWA argument, Plaintiff sufficiently pleads joint employment under the PMWA.

Defendants' motion ignores Plaintiff's PMWA claim except for a footnote making the conclusory assertion that PMWA employment principles are identical to the FLSA analysis. See id. at p. 6 n. 3.  This approach to the PMWA claim is wrong for two independent reasons:

*First*, the PMWA's definition of "employer" differs from the FLSA.  As Judge Wettick has explained, the PMWA definition "includes any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to an employee." See Henderson v. University of Pittsburgh Medical Center, 2010 Pa. Dist. & Cnty. Dec. LEXIS 43, *10 (Allegheny C.C.P. Feb. 24, 2010) (citing 43 P.S. § 333.102(g)).  Moreover, the term "person" is defined to include "a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." Id. at *10 n. 6 citing 1 Pa. C.S. § 1991.  Thus, a parent corporation's status as a joint employer to employees working for a corporate subsidiary is virtually assured due to the PMWA's extremely broad definition of "employer" as including "any person" acting "indirectly" in the interest of an employer in relation to an employee. See id. at *10.  Trinity – which, for example, maintained Plaintiff's payroll data, provided his worker's compensation insurance, and issued his Policies and Procedures – easily meets this standard.  See Section C supra.

*Second*, even if Defendants are correct that the FLSA and PMWA are identical with respect to the "employment" question, Plaintiff's PMWA claim would survive Defendant's motion to dismiss for the same reasons the FLSA claim survives.

**F.   If the Court grants Defendants' motion, Plaintiff should be permitted to file an amended complaint.**

Finally, if the Court holds that Plaintiff has not adequately pled employment, Plaintiff respectfully requests that the Court allow him to file an amended complaint that contains more detailed allegations.  Such a procedure is warranted under Third Circuit law.  See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010); Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008); Acosta v. Democratic City Committee, 288 F. Supp. 3d 597, 653 (E.D. Pa. 2018); Accurso v. Infra-Red Services, Inc., 23 F. Supp. 3d 494, 501 (E.D. Pa. 2004).

**WHEREFORE**, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

Date:  August 31, 2018                                      Respectfully,

/s/ Peter Winebrake
Peter Winebrake, Esq.
R. Andrew Santillo, Esq.
Mark J. Gottesfeld, Esq.
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
 (215) 884-2491