IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN LAYER, on behalf of himself and similarly situated employees,<br>　　　　　　　　Plaintiff,<br>　　v.<br>TRINITY HEALTH CORPORATION; MERCY HEALTH SYSTEM; and LOURDES HEALTH SYSTEM,<br>　　　　　　　　Defendants. | : : : : : : : : : : : : : <br>2:18-cv-02358-TR |

## CLASS/COLLECTIVE ACTION SETTLEMENT AGREEMENT

The Parties (defined below) hereby **STIPULATE** and **AGREE** that the Action (defined below) is settled pursuant to the following terms and conditions and subject to judicial approval:

**1.** **Definitions.**

"**Action**" means the above-captioned litigation.

"**Agreement**" means this Class/Collective Action Settlement Agreement.

"**Class Counsel**" means Winebrake & Santillo, LLC.

"**Court**" means the United States District Court for the Eastern District of Pennsylvania.

"**Defendants**" means Trinity Health Corporation, Mercy Health System of Southeastern Pennsylvania, and Our Lady of Lourdes Health Care Services, Inc., and all of their past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and insurers.

"**Defense Counsel**" means Post & Schell, PC.

"**Effective Date**" means (i) 35 calendar days after the Court enters an order granting final approval of the Settlement and dismissing the Action or (ii) if final approval is appealed and upheld, 10 business days after all avenues for appellate review are exhausted.

"**Non-Opt-In Class Member**" means the 65 individuals listed in Exhibit A with a "CM" or "CML" designation in the "Type" column.

"**Notice Form**" means the document attached as Exhibit B.

"**Opt-Ins**" means the 15 individuals listed in Exhibit A with an "OI" designation in the "Type" column.

"**Parties**" means Plaintiff and Defendants.

"**Plaintiff**" means John Layer.

"**Payment Amount**" means, for each Opt-In and Non-Opt-In Class Member, the amount listed in Exhibit A in the "Amount" column. The Payment Amounts will be increased on a *pro rata* basis to account for: (i) any portion of Class Counsel's requested attorney's fees/expenses disapproved by the Court; (ii) any portion of Plaintiff's service award disapproved by the Court; and (iii) any Payment Amounts attributable to Opt-In or Non-Opt-In Class Members who exclude themselves from the Settlement pursuant to Paragraph 7 of this Agreement.

"**Preliminary Approval Date**" means the date on which the Court enters the anticipated order certifying the class/collective for settlement purposes only and preliminarily approving the Settlement.

"**Released Claims**" means all claims arising between June 6, 2015 and July 1, 2017 asserted in or reasonably related to the Action, including, but not limited to, all such claims seeking unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

"**Released Parties**" means Defendants and their past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, attorneys, and insurers. This includes, but is not limited to, St. Mary Medical Center, St. Francis Medical Center and St. Francis Hospital, Inc.

"**Settlement**" means the terms, conditions, and obligations described in this Agreement.

"**Settlement Participants**" means all Opt-Ins and Non-Opt-In Class Members who do not exclude themselves from the Settlement pursuant to paragraph 7 below.

2.  **Conditions Precedent.** This Settlement is conditioned on passage of the Effective Date.

3.  **Failure to Obtain Court Approval**. If the Settlement is not approved by the Court, it will be null and void, and the Parties will return to the *status quo ante*. During the remainder of the litigation, the Parties will be prohibited from relying on any negotiations, papers, or orders (including any class/collective certification order) pertaining to or resulting from the Settlement.

4.  **Maximum Settlement Amount.** Defendants' maximum payment under this Settlement is $280,000.00 plus any payroll taxes/withholdings (such as, for example, taxes/withholdings for worker's compensation insurance, unemployment insurance, or FICA) ordinarily borne by Defendants pursuant to their normal payroll practices. This Maximum Settlement Amount includes all payments to Settlement Participants, any payment to Class Counsel for attorney's fees, costs, and expenses, and any service award payment to Plaintiff. Any requirement that Defendants pay more than this Maximum Settlement Amount constitutes a material change to this Agreement and justifies Defendants' unilateral termination of this Agreement and withdrawal from the Settlement.

5.  **Release.** Upon passage of the Effective Date, Settlement Participants (on behalf of

themselves and their past, present and future agents, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or predecessors) release and forever discharge the Released Parties from the Released Claims.

      6.    **<u>Notice of the Settlement.</u>** Class Counsel and Defense Counsel will work cooperatively to create an Excel spreadsheet listing the last known residential address of all Settlement Participants. This list will be finalized and provided to Class Counsel within 7 calendar days after the execution of this Agreement. On or before 7 calendar days after the Preliminary Approval Date, Class Counsel will mail to each Opt-In or Non-Opt-In a package containing the Notice Form. If the post office returns any package to Class Counsel with a forwarding address, Class Counsel will promptly re-mail the package to the forwarding address. If the post office returns any package to Class Counsel without a forwarding address, Class Counsel will work diligently to obtain an updated address and will promptly mail the package to any updated address. Class Counsel will prepare a sworn declaration describing the notice process to be filed with any other papers seeking final approval of the Settlement.

      7.    **<u>Exclusions From the Settlement.</u>** Any Opt-In or Non-Opt-In Class Member desiring to exclude himself/herself from the settlement must do so in writing. Exclusion requests must be mailed to Class Counsel pursuant to the instructions in the Notice Form and must be postmarked by the date falling 56 calendar days after the Preliminary Approval Date (unless that day is a Sunday, in which case it must be postmarked by the next business day). All exclusion requests will be submitted to the Court with any papers seeking final approval of the Settlement.

      8.    **<u>Objections to the Settlement.</u>** Any Opt-In or Non-Opt-In Class Member desiring to object to the settlement must do so in writing. Objections must be mailed to Class Counsel pursuant to the instructions in the Notice Form and must be postmarked by the date falling 56 calendar days after the Preliminary Approval Date (unless that day is a Sunday, in which case it must be postmarked by the next business day). All such objections will be submitted to the Court with any papers seeking final approval of the Settlement.

      9.    **<u>Payments to Claimants.</u>** Within 28 calendar days after the Effective Date,

Defendants will issue payroll checks payable to each Settlement Participant reflecting his/her Payment Amount. Defendants will mail these payroll checks to Class Counsel. On or before 35 calendar days after the Effective Date, Class Counsel will mail these payments to the best known address for each Settlement Participant. If the post office returns any payments to Class Counsel with a forwarding address, Class Counsel will promptly re-mail the payments to the forwarding address. If the post office returns any payments to the Class Counsel without a forwarding address, Class Counsel will work diligently to obtain an updated address and will promptly re-mail the payments to any updated address. Class Counsel will work diligently to ensure that every check is delivered and cashed. Defense Counsel will cooperate with Class Counsel to achieve this same goal. On the date falling 77 calendar days after the Effective Date, Defendants will provide to Class Counsel a list containing the names and last known phone numbers of any Participating Class Members who have not yet cashed their checks. Class Counsel will work diligently to contact these individuals and ensure that their checks are delivered and cashed. At the end of the applicable tax year, Defendants will issue to each Participating Class Member who receives and cashes a settlement check an IRS Form W-2 reflecting the payment. Any check uncashed 150 calendar days after the Effective Date will be forfeited by the Settlement Participant, and the underlying funds (not including payroll taxes/withholdings ordinarily borne by Defendants) will be donated to the Pennsylvania IOLTA Board.

  **10.**  **Payment to Class Counsel.** Class Counsel will request that the Court approve the payment to Class Counsel of $96,500.00 in combined fees, costs, and expenses. Any unapproved portion of this award for fees and expenses will be distributed *pro rata* to Settlement Participants. Defendants will issue and mail a check to Class Counsel for any Court-approved fees, costs, and expenses to Class Counsel on or before 28 calendar days after the Effective Date and will issue to Class Counsel an IRS 1099 Form as required. The Settlement is not contingent on the Court's approval of this requested amount, and any disapproved monies will be distributed to each Settlement Participant based on his/her percentage share of the total payments to all Settlement Participants.

11. **Service Award.** Class Counsel will request that the Court approve a $10,000.00 service award to Plaintiff. Any unapproved portion of this service award will be distributed *pro rata* to Settlement Participants. Defendants will issue and mail a check to Class Counsel for any Court-approved service award to Plaintiff on or before 28 calendar days after the Effective Date and will issue to Plaintiff an IRS 1099 Form as required.

12. **Dismissal with Prejudice.** Upon the Court's final approval of this Settlement, the Action will be dismissed with prejudice in its entirety. The Parties will request that the Court retain jurisdiction to enforce this Agreement.

13. **No Representations.** In entering into this Settlement, no Party relies on any statements, representations, or promises not described in this Agreement.

14. **Consent.** Each Party has carefully read and understands this Agreement and has received independent legal advice with respect to the Agreement.

15. **Successors.** This Agreement will inure to the benefit of and be binding upon each Party's heirs, successors, and assigns.

16. **No Assignments.** No Party has assigned or transferred, or purported to assign or transfer, to any other person or entity any rights or interests pertaining to the Action or Settlement.

17. **No Presumptions.** In interpreting this Agreement, there will not be any presumption of interpretation against any Party.

18. **No Admissions and No Prevailing Party.** This Agreement is the result of a compromise between the Parties for the sole purpose of resolving the Action and avoiding the time and expense of further litigation. Nothing in this Agreement constitutes an admission of liability or the propriety of class certification by any Released Party with regard to the subject matter of the Action. Nothing herein may be construed or used as an admission or as evidence of the validity of any claim against any Released Party.

19. **Tax Liability.** Defendants, Released Parties, Defense Counsel, and Class Counsel make no representations as to the tax treatment or legal effect of the payments called for under this Agreement. Plaintiff, Class Counsel, and Settlement Participants will be solely responsible for the

payment of any taxes and penalties assessed on their payments described in this Agreement.

**20.** **Duty to Defend.** The Parties will support the Agreement's approval and enforcement and will defend the Agreement from any legal challenge.

**21.** **Warranty of Authority.** Each signatory below warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party for whom he/she purports to sign.

**22.** **Evidentiary Privilege.** This Agreement falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408.

**23.** **Applicable Law.** This Agreement will be governed, enforced, and interpreted according to Pennsylvania law.

**24.** **Execution.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: 4/30/19

_____
John Layer

Dated: _____

_____
For Post & Schell, PC

Dated: _____

_____
Trinity Health Corporation

Dated: _____

_____
Mercy Health System of Southeastern Pennsylvania

Dated: _____

_____
Lourdes Health Care Services, Inc.

payment of any taxes and penalties assessed on their payments described in this Agreement.

    **20.** **Duty to Defend.** The Parties will support the Agreement's approval and enforcement and will defend the Agreement from any legal challenge.

    **21.** **Warranty of Authority.** Each signatory below warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party for whom he/she purports to sign.

    **22.** **Evidentiary Privilege.** This Agreement falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408.

    **23.** **Applicable Law.** This Agreement will be governed, enforced, and interpreted according to Pennsylvania law.

    **24.** **Execution.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____    _____
                                                               John Layer

Dated: _____    _____
                                                               For Post & Schell, PC

Dated: _____    _____
                                                               Trinity Health Corporation

Dated: 4-26-19    *[signature: Susan Croskey]*_____
                                                               Mercy Health System of Southeastern Pennsylvania

Dated: _____    _____
                                                               Lourdes Health Care Services, Inc.

payment of any taxes and penalties assessed on their payments described in this Agreement.

**20. Duty to Defend.** The Parties will support the Agreement's approval and enforcement and will defend the Agreement from any legal challenge.

**21. Warranty of Authority.** Each signatory below warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party for whom he/she purports to sign.

**22. Evidentiary Privilege.** This Agreement falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408.

**23. Applicable Law.** This Agreement will be governed, enforced, and interpreted according to Pennsylvania law.

**24. Execution.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____

John Layer

Dated: _____

For Post & Schell, PC

Dated: 4/30/19

Trinity Health Corporation

Dated: _____

Mercy Health System of Southeastern Pennsylvania

Dated: 5/15/19

Lourdes Health Care Services, Inc.

7

payment of any taxes and penalties assessed on their payments described in this Agreement.

20. **Duty to Defend**. The Parties will support the Agreement's approval and enforcement and will defend the Agreement from any legal challenge.

21. **Warranty of Authority**. Each signatory below warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party for whom he/she purports to sign.

22. **Evidentiary Privilege**. This Agreement falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408.

23. **Applicable Law**. This Agreement will be governed, enforced, and interpreted according to Pennsylvania law.

24. **Execution**. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____        _____
                              John Layer

Dated: May 20, 2019           _____
                              For Post & Schell, PC

Dated: _____        _____
                              Trinity Health Corporation

Dated: _____        _____
                              Mercy Health System of Southeastern Pennsylvania

Dated: _____        _____
                              Lourdes Health Care Services, Inc.

Dated: 4/30/19

_Mark J. Gottesfeld_
Winebrake & Santillo, LLC

# Exhibit A

| Name (Last, First) | Type | Payment Amount |
|---|---|---|
| Abraham, Susan | CML | $526.00 |
| Agu, Kenneth | CM | $1,588.71 |
| Ali, Yasmeen | CM | $3,273.65 |
| Arbiz, Nancy | OI | $1,284.55 |
| Badio, Guy | OI | $2,009.05 |
| Bongard, Elizabeth | CML | $112.60 |
| Brocious, Vanessa | CM | $2,406.51 |
| Brown, William | CM | $1,502.46 |
| Buettler, Wendy | CML | $2,493.40 |
| Calvanese, Karen | CML | $108.70 |
| Cami, Janaq | CM | $1,460.90 |
| Chicas-Gonzalez, Yesenia | OI | $2,088.70 |
| Clayton, Charlena | CM | $159.38 |
| Conway, Linda | CML | $1,446.40 |
| Dugent, Elizabeth J | CM | $1,244.46 |
| Epperson, Neveenah | CML | $32.50 |
| Feil, Michele | CML | $1,337.80 |
| Ferrell, Julia | CML | $1,272.40 |
| Frank, Gregory | CM | $3,954.68 |
| Freeman, Sherri | OI | $12,629.95 |
| Gavin, John W. | OI | $7,533.25 |
| Gaynor, Jennifer | CML | $260.20 |
| George, Jessy | CML | $1,894.30 |
| Gomez, Stephanie | CM | $1,492.15 |
| Gonzalez, Racquel | OI | $78.55 |
| Gore, Sherri L | OI | $6,832.15 |
| Grady, Jekira | CM | $2,100.08 |
| Groysman, Inna | CML | $3,937.30 |
| Hall, Michelle | CML | $63.70 |
| Hazlett-Weaver, Lauren | CM | $234.87 |
| Houseal, Sarah | CM | $4,197.28 |
| Howard, Stephen | CM | $3,537.78 |
| Hughes, Joseph | CML | $1,966.30 |
| Hutson, Mary E | CM | $642.50 |
| Jackson, Collen | CM | $25.15 |
| James, Erik | CML | $2,231.50 |
| John, Sindhu | CML | $1,222.30 |
| Johnson, Shiji | CM | $147.13 |
| Joseph, Binu | OI | $3,427.00 |
| Kane, Karen | CML | $4,555.30 |
| Kurtz, Brittany A | CML | $580.00 |
| Latsch, Christopher | OI | $3,336.10 |
| Layer, John | OI | $9,453.85 |
| Lemp, Amy | CM | $28.14 |

# Exhibit A

| Name (Last, First) | Type | Payment Amount |
|---|---|---|
| Litanzil, Handersen | CML | $470.50 |
| Ly, Nicholas | CM | $84.64 |
| Magargal, Kathryn | CM | $559.99 |
| Marsala, Linda | OI | $2,298.40 |
| Marsden, Deborah M | CML | $1,834.60 |
| Mathew, Ron | CML | $1,191.70 |
| Mathura, Ava | CM | $33.67 |
| Matyszczak, Nina | CML | $133.90 |
| McCaskill, Genise | CM | $409.16 |
| Mita, Ervin | CM | $10,998.47 |
| Mitchell, Dana | CM | $737.12 |
| Monzo, James P | CM | $80.16 |
| Mourer, Kaitlyn | CML | $2,087.50 |
| Nau, Elaine | CML | $10,848.70 |
| Nazario, Leia | CM | $242.64 |
| Nweze, Cordelia C | CM | $265.36 |
| Ogunpitan, Toyosi | CM | $127.24 |
| Palafox, Ivy | OI | $186.55 |
| Pearce, Joseph F | OI | $25,246.60 |
| Pohl, Renate | CML | $110.50 |
| Puglisi, Brian | OI | $654.55 |
| Roy, Pushpa | CML | $4,283.50 |
| Ryan, Kathleen | CM | $225.00 |
| Salomon, Angela | CML | $2,072.50 |
| Schramm (Brown), Chelsea | CM | $161.33 |
| Shannon, Anthony | CM | $1,176.74 |
| Simprevil, Melissa | CML | $1,494.40 |
| Sinha, Pramila | CM | $39.65 |
| Sochalski, Danielle | CM | $47.57 |
| Thomas, Dency | CM | $3,295.92 |
| Thomas, Jennifer | CM | $114.99 |
| Tillett, Ashley | CM | $45.03 |
| Tolby (Mchugh), Amanda | OI | $488.95 |
| Tressler, Maureen | CML | $124.90 |
| Wood, Keisha | CM | $205.42 |
| Wyatt, Kelly | CM | $412.45 |
| **TOTALS** |  | $173,500.00 |

# Exhibit B

<u>**NOTICE OF SETTLEMENT**</u>

*Layer, et al. v. Trinity Health Corporation, et al., 2:18-cv-02358-TR*
**United States District Court, Eastern District of Pennsylvania**

TO:   [*INSERT NAME*]

**YOU ARE COVERED BY THE SETTLEMENT OF THIS CLASS ACTION LAWSUIT.**

**A FEDERAL JUDGE AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

| 1. | **What is the Lawsuit About?** |
|---|---|

In June 2018, an employee named John Layer started this lawsuit in federal court in Philadelphia, PA seeking unpaid overtime wages allegedly owed to certain employees at Trinity Health Corporation's Regional Health Ministries ("RHMs") who worked at more than one RHM in Eastern Pennsylvania, Delaware and/or New Jersey during the same workweek. The federal overtime wage claim covers the time period between November 15, 2015 and July 1, 2017, while the overtime wage claim under Pennsylvania law covers the time period between June 6, 2015 and July 1, 2017.

The lawsuit covers employees who worked at two or more RHMs during the same 7-day workweek. For example, Mr. Layer sometimes worked at both Mercy Health System of Southeastern Pennsylvania and Our Lady of Lourdes Health Care Services, Inc. during the same workweek. You may have worked at these two RHMs. Or you may have worked at some other combination of RHMs. The RHMs covered by this lawsuit include: Mercy Health System of Southeastern Pennsylvania, St. Mary Medical Center (Langhorne, PA), Our Lady of Lourdes Health Care Services, Inc., St. Francis Medical Center (Trenton, NJ) and St. Francis Hospital, Inc. (Wilmington, DE). Trinity Health Corporation and the various RHMs will be referred to collectively as **"Trinity."**

Under the law, workers are entitled to overtime compensation for all hours worked over 40 during a 7-day workweek. This lawsuit concerns the method by which Trinity and the RHMs paid overtime to employees who worked at two or more RHMs within the same workweek.

According to Mr. Layer, overtime should have been paid based on the total combined number of hours worked at all RHMs during each workweek. For example, if, during a 7-day workweek, an employee worked 36 hours at one RHM and 8 hours at another RHM, according to Mr. Layer, she would be entitled to 4 hours of overtime pay because she worked 44 total combined hours during the same workweek.

Trinity and the RHMs disagree because they believe that each RHM separately employed each employee. According to Trinity, an employee's hours worked at different RHMs during a 7-day workweek should not be combined in determining overtime pay. For example, if an employee worked 36 hours at one RHM and 8 hours at another RHM during a 7-day workweek, Trinity asserts she would be entitled to no overtime pay because she never worked over 40 hours at a single RHM. This Court has not decided which side is correct.

This settlement covers 80 employees who worked overtime hours at two RHMs between June 6, 2015 and July 1, 2017. This period from June 6, 2015 until July 1, 2017 is referred to below as the **"Relevant Period."** The 80 employees who worked during this Relevant Period are referred to as **"Class Members."**

| 2. | **Why is there a settlement?** |
|---|---|

The Court has not decided who will win the lawsuit. So both sides run the risk of losing.

*The settlement is a compromise*. It allows both sides to avoid the costs, delays, and risks of further litigation and provides money to Mr. Layer and the Class Members.

In reaching this settlement, Trinity has not admitted violating any laws. Rather, Trinity continues to assert that its pay practices were entirely legal and proper.

| 3. | **How much money will I recover under the settlement?** |

The Judge will decide whether the settlement is fair and reasonable. If the Judge approves the settlement, a total amount of $280,000 will be paid to the Class Members and the law firm identified in Section 8. If the Court subtracts from this amount attorney's fees of $70,000 (25% of the total), $26,500 in litigation expenses, and a $10,000 service award for Mr. Layer, then $173,500 will be paid to the Class Members.

Under the settlement, you are receiving a settlement payment in the gross amount of $****. Because you did/did not previously join this lawsuit by returning a Consent to Join Form and because you did/did not solely work within Pennsylvania when working overtime hours between two RHMs during the Relevant Period, you are receiving **% of your possible recovery. Your payment amount will be reduced to cover taxes. You will receive an IRS W-2 Form reflecting your payment and the associated taxes and withholdings.

If you have any questions about your payment amount or the manner in which it was determined, please call the law firm listed in Section 8.

| 4. | **How can I receive a settlement payment?** |

If this Notice is addressed to you, then you are covered by the settlement and *you do not need to do anything to receive a settlement payment.* Of course, the payment will not be made unless and until the Judge approves the settlement.

| 5. | **What do I give up by receiving a settlement payment?** |

If you do not exclude yourself from the settlement by following the procedures in Section 6, you will release and forever discharge Trinity (as well as its past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, attorneys, and insurers) from all claims arising between June 6, 2015 and July 1, 2017 and asserted in or related to the Action, including, but not limited to, all such claims seeking unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

If you have any questions about the scope of this release, please call the law firms listed in Section 8.

| 6. | **How do I exclude myself from this settlement?** |

If you do not want to participate in the settlement, then you must take steps to exclude yourself.

To exclude yourself, you must prepare a note or letter simply stating: "I wish to be excluded from the Trinity Wage Lawsuit." The letter or note may be typed or handwritten. Be sure to include your signature, printed full name, address, and phone number. To be valid, your exclusion request must be postmarked no later than *[insert]*, **2019** and be mailed to: Trinity Wage Lawsuit, Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025.

If you exclude yourself from the settlement, you will not receive any money, you will not be legally bound by the settlement, and you will not waive or release any legal claims against Trinity.

| 7. | **How do I object to the settlement?** |

You can object to the settlement if you believe it is unfair or should not be approved. The Judge will consider your objection in deciding whether to approve the settlement.

To object to the settlement, you must prepare a letter or note stating that you "object" to the settlement in the Trinity Overtime Lawsuit. The letter or note may be handwritten. Be sure to include your signature, printed full name, address, and telephone number. You may (but are not required to) consult with or retain an attorney to assist you in drafting the objection. If you are not being assisted by an attorney, simply do your best to describe the reasons why you object to the settlement.

To be valid, your objection must be postmarked no later than *[insert]*, **2019** and be mailed to: Trinity Wage Lawsuit, Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025.

| 8. | **Do I have a lawyer?** |

Unless you exclude yourself from the settlement or retain your own personal attorney, you are represented in this lawsuit by Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone (215) 884-2491; website www.winebrakelaw.com. Lawyers from this firm will answer your questions about the lawsuit and settlement free of charge and in strict confidence. If you call, please identify yourself as a "Class Member" in the "Trinity Wage Lawsuit" and ask to speak with one of the assigned lawyers.

| 9. | **How do the lawyers get paid?** |

You will ***not*** pay any legal fees or expenses out of your individual settlement payment described in Section 3. Rather, the above firm will ask the Judge to approve $70,000 (which is 25% of the total settlement amount) in attorney's fees and $26,500 in litigation expenses. The Judge has not yet decided whether he will approve these requested fees and expenses.

| 10. | **When and where will the Court decide whether to approve the settlement?** |

The Court will hold a hearing to decide whether to approve the settlement. You are not required or expected to attend that hearing. However, you certainly are welcome to attend.

The hearing will take place on _____, 2019 at __ in Courtroom __ of the United States Courthouse, 601 Market Street, Philadelphia, PA 19106.

During the hearing, the Judge will consider whether the settlement is fair and should be approved. The Judge also will consider any written objections to the settlement and will hear from any individuals (or their legal representatives) who wish to be heard.

| 11. | **How do I obtain more information?** |

This Notice summarizes the most important aspects of the proposed settlement. You can obtain further information by calling one of the law firms listed in Section 8.

Dated: _____, 2019          Approved:    Hon. Timothy R. Rice
                                              United States District Court

3